## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | |
| | : | Chapter 13 |
| LENA D. LEWIS, | : | |
| | : | Bankruptcy No. 18-12958-AMC |
| | : | |
| DEBTOR | : | |
| _____ | : | |
| | : | |
| LENA D. LEWIS and | : | |
| JAMES A. LEWIS, | : | |
| | : | |
| PLAINTIFFS | : | |
| | : | |
| V. | : | Adv. Pro. No. 18-00240-AMC |
| | : | |
| U.S. BANK NATIONAL ASSOCIATION, | : | |
| as TRUSTEE for CREDIT SUISSE | : | |
| FIRST BOSTON MORTGAGE | : | |
| SECURITIES CORP., CSFB | : | |
| MORTGAGE-BACKED-PASS- | : | |
| THROUGH CERTIFICATES, SERIES | : | |
| 2005-12; WELLS FARGO BANK, N.A.; | : | |
| AMERICA'S SERVICING COMPANY; | : | |
| THE LAW OFFICE of THOMAS | : | |
| RUTLEDGE; AMERICAN SECURITY | : | |
| INSURANCE CO.; ASSURANT | : | |
| SPECIALTY PROPERTY; | : | |
| ASSURANT, INC.; and RUTLEDGE | : | |
| CLAIMS MANAGEMENT, INC. | : | |
| | : | |
| DEFENDANTS | : | |
| _____ | : | |

Ashely M. Chan, United States Bankruptcy Judge

## OPINION

## I.    INTRODUCTION

In May 2013, real property owned jointly by plaintiffs, Lena D. Lewis ("Ms. Lewis") and

her husband, James Lewis ("Mr. Lewis," collectively with Ms. Lewis, "Plaintiffs"), located at

1707 Page Street, Philadelphia, PA ("Property"), was damaged by a fire. Mr. Lewis recovered for the damage caused by the fire under a homeowner's insurance policy on the Property issued by Travelers Indemnity Company ("Travelers Policy").

Meanwhile, America's Servicing Company ("ASC"), an affiliate of Wells Fargo Bank, N.A. ("Wells Fargo"), the servicer of the first mortgage on the Property, submitted an insurance claim in connection with the fire at the Property through its third party claims administrator, the Law Office of Thomas Rutledge ("Rutledge Law Office"), later succeeded by Rutledge Claims Management, Inc. ("Rutledge Claims," collectively with Rutledge Law Office, "Rutledge Defendants"), to American Security Insurance Company ("ASIC"), which held a lender-placed insurance policy on the Property as of October 2012 ("ASIC Policy"). Shortly after learning that ASIC had been unable to access the Property for inspection, Rutledge withdrew the insurance claim. At some point, the Property was demolished. Later, Ms. Lewis initiated a claim with ASIC for the fire damage to the Property, informing ASIC at the outset that the Property had been demolished. Ms. Lewis was ultimately unsatisfied with how ASIC handled her claim and believes it should have been paid years ago.

After Ms. Lewis filed a voluntary petition under Chapter 13 of the Bankruptcy Code in 2018, the Plaintiffs commenced this adversary proceeding against, *inter alia,* ASIC for breach of contract and bad faith, and the Rutledge Defendants for breach of contract. ASIC and the Rutledge Defendants now move for summary judgment. ASIC argues that there is no genuine dispute that (1) it is not liable for breach of contract because Plaintiffs have already recovered under the Travelers Policy and the Plaintiffs have not demonstrated that they are entitled to recover under the ASIC Policy, which is an excess policy; (2) Plaintiffs, not ASIC, breached the ASIC Policy; and (3) Plaintiffs failed to substantiate any facts supporting the bad faith claim.

The Rutledge Defendants argue that there is no genuine dispute that (1) the Plaintiffs have not adduced any evidence establishing that Plaintiffs were intended third party beneficiaries to the claims administration contract between Rutledge and Wells Fargo; (2) Plaintiffs have not presented any evidence showing that Rutledge breached its contract with Wells Fargo; and (3) the breach of contract claim was filed outside of the statute of limitations.

For reasons more fully described below, the Court will grant ASIC's summary judgment motion in part and deny it in part, and will grant the Rutledge Defendants' motion for summary judgment, finding that: (1) there is no genuine dispute that Plaintiffs cannot establish the *prima facie* elements necessary for a breach of contract claim against the Rutledge Defendants since the Plaintiffs have not produced the terms of the contract on which their breach of contract claim against the Rutledge Defendants hinges; (2) because Plaintiffs have already recovered under the Travelers Policy and have not demonstrated their entitlement to recover under an excess policy, there is no genuine dispute they cannot sustain a breach of contract claim against ASIC; and (3) there are genuine issues of fact in dispute material to the Plaintiffs' bad faith claim against ASIC.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

By way of background, Plaintiffs are co-owners and co-mortgagors of the Property. Second Am. Compl. ¶¶ 1-2. On September 16, 2005, Plaintiffs executed a mortgage in favor of Credit Suisse First Boston Financial Corporation as the lender,[1] with Wells Fargo servicing the mortgage. U.S. Bank, Wells Fargo, & ASC Joint Ans. to Second Am. Compl. ¶¶ 1, 2, 12 ("U.S. Bank Joint Ans."). On August 11, 2009, Wells Fargo, doing business as ASC, executed a loan modification agreement with Ms. Lewis. *Id.* at ¶ 5. In October 2012, ASC obtained a force-

---

[1] U.S. Bank National Association is the Trustee for Credit Suisse First Boston Mortgage Securities, Corp. CSFB Mortgage-Backed Pass Through Certificates, Series 2005-12. U.S. Bank, Wells Fargo, & ASC Joint Ans. to Second Am. Compl. ¶ 3.

placed insurance policy from ASIC on the Property effective for one year, with ASC listed as the

"insured/mortgagee" and Ms. Lewis listed as "additional insured."[2] Compl. Ex. B. The ASIC

Policy provided, in relevant part,

> Other Insurance. If there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted. ASIC Mot. Summ. J. Ex. A-1 Policy p. 4, Condition No. 2.

Wells Fargo contracted with Rutledge Law Office to perform as the third party administrator to

file insurance claims on behalf of Wells Fargo and its affiliates. Rutledge Mot. Summ. J. Ex. E

¶8.

On April 23, 2013, the Plaintiffs filed a joint bankruptcy petition under chapter 13 of the

Bankruptcy Code. Case No. 13-13556 ECF Doc. ("ECF") 1. On May 21, 2013, the Plaintiffs

filed their bankruptcy schedules. *Id.* at ECF 25. Schedules A and C valued the Property at

$110,500. *Id.* Approximately ten days later, on May 30 and 31, 2013, the Property was damaged

by a fire. Compl. Ex. D. At the time of the fire, Mr. Lewis held an insurance policy on the

Property through Travelers, which insured the Property for up to $257,671.23. Rutledge Mot.

Summ. J. Ex. B J. Lewis Dep., 36:23-37:5; ASIC Mot. Summ. J. Ex. B-2 J. Lewis Dep., 36:23-

37:5; Ex. B-5 p. 1. Shortly after the fire, Mr. Lewis made a claim for fire damage under the

Travelers Policy ("Travelers Claim"). Rutledge Mot. Summ. J. Ex. B J. Lewis Dep., 36:23-37:5;

ASIC Mot. Summ. J. Ex. B-2 J. Lewis Dep., 36:23-37:5. He also had the interior of the Property

completely gutted, removing all interior walls. Rutledge Mot. Summ. J. Ex. B J. Lewis Dep.,

42:14-23, 45:4-18, 47:2-7; ASIC Mot. Summ. J. Ex. B-2 J. Lewis Dep., 42:14-23, 45:4-18, 47:2-

---

[2] Force-placed insurance is defined as "hazard insurance obtained by a servicer on behalf of the owner or assignee of a mortgage loan that insures the property securing such loan." 12 C.F.R. § 1024.37.

7; Ex. B-7 p. 5-6. Subsequently, a section of the exterior wall collapsed due in part to the gutting of the interior of the building. ASIC Mot. Summ. J. Ex. B-7 p. 5-6.

In June 2013, Rutledge Law Office filed an insurance claim on behalf of Wells Fargo under the ASIC Policy in connection with damage from the fire at the Property ("Claim"). Rutledge Mot. Summ. J. Ex. D. On June 30, 2013, ASIC retained an adjuster, Don Stout ("Mr. Stout"), to inspect the Property. ASIC Mot. Summ. J. Ex. B-11 p. 4. According to ASIC, Mr. Stout could not access the Property and contacted Rutledge Law Office several times to provide access. *Id.* On July 9, 2013, Rutledge Law Office informed Wells Fargo via email that the Property had not been re-secured and ASIC had been unable to access the Property's interior due to a lockbox on the railing and a new master lock at the Property. ASIC Mot. Summ. J. Ex. B-6; Rutledge Mot. Summ. J. Ex. D. In the same email, Rutledge Law Office advised Wells Fargo that "[a] review of the Fidelity screens indicates that the loan is in active Chapter 13 Bankruptcy," and if the Property could not be "re-keyed," Rutledge Law Office would be forced to close the Claim file until access to the Property became available "as this is a requirement under the [ASIC] policy." ASIC Mot. Summ. J. Ex. B-6; Rutledge Mot. Summ. J. Ex. D.

On July 10, 2013, Wells Fargo advised Rutledge Law Office that the Property could not be re-keyed because the Plaintiffs' mortgage loan was in active bankruptcy, but that Wells Fargo would monitor the loan for bankruptcy completion and have the Property re-keyed at that time. ASIC Mot. Summ. J. Ex. B-6; Rutledge Mot. Summ. J. Ex. D. Accordingly, on July 11, 2013, Rutledge Law Office informed Wells Fargo that "due to the property being inaccessible, our office will be closing our file at this time. If and when the bankruptcy is completed and the property becomes accessible, please advise and we will re-open our file and advise the carrier to re-open the claim…" Rutledge Mot. Summ. J. Ex. D.

On July 26, 2013, a structural engineering report generated after an inspection of the Property in connection with the Travelers Claim concluded that "the recommended method of repair is to demolish the building and rebuild it" because "[t]he home is unsafe and in danger of collapse" due in part to Mr. Lewis gutting the interior of the building. ASIC Mot. Summ. J. Ex. B-7 p. 6-7. Ultimately, on August 8, 2013, Mr. Lewis received a settlement from Travelers in the amount of $257,671.23 ("Travelers Settlement") for the Travelers Claim.[3] ASIC Mot. Summ. J. Ex. B-5. At no point did either of the Plaintiffs notify ASIC that Travelers had paid a settlement in connection with the fire damage to the Property.

Mr. Lewis initially spent around $80,000-$100,000 of the Travelers Settlement attempting to rehabilitate the Property. ASIC Mot. Summ. J. Ex. B-2 J. Lewis Dep., 55:22 – 56:5. However, eventually, the Property was completely demolished, in part, due to the structural damage caused by the interior gutting of the Property. *Id.* at 37:6-23, 55:13-56:5. *See also* ASIC Mot. Summ. J. Ex. B-7 p. 5-7. Mr. Lewis could not account for how he had spent the remaining proceeds from the Travelers Settlement. ASIC Mot. Summ. J. Ex. B-2 J. Lewis Dep., 55:22 – 56:16.

On June 6, 2014, Ms. Lewis called ASIC to advise that the Property had been demolished and she desired to re-open the Claim in connection with the fire at the Property. ASIC Mot. Summ. J. Ex. B-11 p. 2. On August 5, 2014, following the call, Ms. Lewis emailed ASIC photos of the Property after the fire, accompanied by an official notice from the City of Philadelphia

---

[3] The Travelers Settlement line items are as follows: (1) General Conditions/Equipment/Miscellaneous ($19,440); (2) Foundations ($8,999.50); (3) Slab on Grade ($1,759.50); (4) Framing ($17,342.50); (5) Roofing ($4,082.26); (6) Exterior Walls ($64,027.95); (7) Partitions ($15,863); (8) Wall Finishes ($16,456.50); (9) Floor Finishes ($11,984); (10) Ceiling Finishes ($4,437.90); (11) Equipment ($25,239); (12) Plumbing Systems ($39,294.90); (13) HVAC Systems ($16,848); (14) Electrical Systems ($11,035.80); (15) Attached Structures ($3,640.62). ASIC Mot. Summ. J. Ex. B-5. The foregoing line items totaled $260,451.43. *Id.* However, the $1,000 deductible was subtracted from that amount. *Id.* Travelers further reduced the estimate total by the amount the estimate exceeded the policy limit, $1,780.20. *Id.* Ultimately, the Plaintiffs recovered $257,671.23, which is the Travelers Policy limit. *Id.*

Department of Licenses and Inspections issued September 20, 2013 declaring the Property imminently dangerous due to structural damage. ASIC Mot. Summ. J. Ex. A-7; Pl. Resp. Mot. Summ. J. p. 6. The photos showed the Property's gutted interior, a collapsed wall, floor joists missing at the stairs, and damaged second-floor joists. ASIC Mot. Summ. J. Ex. A-7.

On September 5, 2014, Ms. Lewis emailed ASIC requesting an update on the Claim. ASIC Mot. Summ. J. Ex. A-9. In a letter to Ms. Lewis dated September 5, 2014, ASIC informed her that the Claim remained open pending receipt of the "Adjusters Report" and that ASIC expected to conclude processing the Claim within thirty days. ASIC Mot. Summ. J. Ex. A-8. On September 8, 2014, an ASIC claims adjuster informed Ms. Lewis via email that she had called the adjusting firm and escalated the claim for immediate status. ASIC Mot. Summ. J. Ex. A-9. That same day, Ms. Lewis replied that she had received the same message two weeks prior. *Id.* On September 11, 2014, ASIC informed Ms. Lewis that the independent adjuster needed (1) a Broker Price Opinion ("BPO") or Appraisal for the risk showing rooms with measurements and photos with the condition and (2) documentation for what part of the structure had been damaged by the fire loss. *Id.* On September 12, 2014, Ms. Lewis informed ASIC that she did not have "any BPO or other estimates as far as room sizes," explaining that she had already sent ASIC pictures of the Property before demolition. *Id.*

On September 23, 2014, Rutledge Law Office emailed Wells Fargo stating:

> [w]e recently received an email from the [ASIC] adjuster…who advised that the borrower requested that the claim be re-opened as the home has now been demolished. The insurance adjuster is requesting that we provide Assurant[4] with a copy of the original appraisal in order for them to determine the dimensions of the property. Given that we normally refer Assurant claims back to ASC in the event the borrower becomes involved, please advise if you would like us to re-open our

---

[4] ASIC is an indirect insurance company subsidiary within Assurant Specialty Property, an operating segment of Assurant, Inc. *Roberts v. Wells Fargo Bank, N.A.,* 4:12–cv–200, 2013 WL 1233268, at *6 (S.D. Ga. March 27, 2013).

file to monitor the status of the claim and provide the adjuster with any information they request. If so, please provide us with the original appraisal and payoff statement as of June 4, 2013. Rutledge Mot. Summ. J. Ex. D.

On September 24, 2014, ASIC advised Ms. Lewis that the claims adjuster was still working on acquiring the requested documentation from Rutledge Law Office so that ASIC could draft an estimate of the damage to the Property. ASIC Mot. Summ. J. Ex. A-9. Meanwhile, on October 7, 2014, Wells Fargo instructed Rutledge Law Office to re-open its file for the Claim. Rutledge Mot. Summ. J. Ex. D. The next day, Wells Fargo provided Rutledge Law Office with the original appraisal on the Property and a payoff statement as of June 4, 2013, which Rutledge Law Office then provided to ASIC. *Id.*

On October 29, 2014, Ms. Lewis emailed ASIC asking for updates on her Claim. ASIC Mot. Summ. J. Ex. A-9. On November 4, 2014, an ASIC claims manager called Ms. Lewis and left a voicemail requesting a call-back. *Id.* On November 6, Ms. Lewis attempted to call back multiple times but was repeatedly disconnected, so she followed up with an email requesting that the ASIC claims manager try calling her again. *Id.* On December 19, 2014, Ms. Lewis asked ASIC whether documents she had faxed in connection with her claim had been received. *Id.* The same day, ASIC confirmed receipt of the faxed documents, which were forwarded to the independent adjuster to "see if we can make progress on your claim with this." *Id.* On December 31, 2014, Ms. Lewis requested an update on her claim. *Id.*

On January 13, 2015, ASIC emailed Ms. Lewis informing her that

> [a]t this point the adjuster has done all he can do. We do know there was a fire at your home, however, we were not able to inspect so we do not know exactly which rooms were affected. The appraisal you provided us with and we presented to the adjuster is the same exact one that the bank provided to us. Without knowing exactly which rooms were affected and the measurements of the affected rooms the adjuster cannot write an estimate for the damages. If you have any of this information and can forward on that would be great. But at this point we

cannot move forward with the claim as we do not have enough information to write an estimate for the fire damages. *Id.*

Subsequently, on January 29, 2015, Rutledge Law Office informed Wells Fargo that

> [w]e provided Assurant with all the documentation available to us as requested. Prior to the demolition, the property did not appear to be a total loss as it was still standing and did not have any visible structural damage. However, there are no interior photos of the dwelling to confirm the extent of the damage and an interior inspection was not completed prior to the demolition. Without inspecting the property, and without detailed interior photos, Assurant could not verify the amount of damage to the property and has since denied the claim. Based on the aforementioned, we believe we have exhausted our efforts in attempting to obtain a recovery for this loss and will be closing our file at this time unless otherwise advised. Rutledge Mot. Summ. J. Ex. D.

On February 2, 2015, Wells Fargo thanked Rutledge Law Office for the update and did not advise Rutledge Law Office not to close the file. *Id.*

In March 2015, Ms. Lewis filed a complaint with the Pennsylvania Insurance Department ("Insurance Department") seeking assistance with expediting processing of the Claim. Pl. Resp. Mot. Summ. J. p. 6-7. *See also* ASIC Mot. Summ. J. Ex. B-9 ("We acknowledge receipt of your inquiry dated March 31, 2015."). On March 31, 2015, the Insurance Department submitted an inquiry to ASIC. ASIC Mot. Summ. J. Ex. B-9. Subsequently, on April 16, 2015, ASIC sent Ms. Lewis a letter to advise her of information needed to address her claim further, including "photos of the affected rooms and any additional documentation that document the rooms damaged by the fire, water and smoke…" ASIC Mot. Summ. J. Ex. A-10. The letter also stated that Mr. Lewis had informed ASIC management that "he had filed a contents claim with his contents carrier and was to provide that documentation," which had not previously been provided and could help with the investigation of the Claim. *Id.* Finally, the letter concluded by telling Ms. Lewis "[y]our claim is important to us. If you have questions about your claim or you have information you would like us to review and consider, please contact us promptly…" *Id.*

9

On April 20, 2015, ASIC responded to the Insurance Department and copied Ms. Lewis,

explaining:

> [t]he Inside Staff Adjuster (ISA) and the Claims Manager have both worked
> closely with Mrs. Lewis; however, the claim was originally filed by the Lender's
> Third Party Administrator (TPA), the Law Office of Thomas Rutledge.
> Nonetheless, prior to our independent adjuster inspecting the home, the TPA had
> withdrawn the claim as the property was inaccessible and requested to close our
> claim file. So the claim was closed in July 2013. In August 2014, the homeowner,
> Mrs. Lewis, contacted our office and requested us to write an estimate to address
> the fire damages to her home. However, based on the photos she submitted, the
> home is not considered a total loss from the fire that had damaged it, but it has
> been completely demolished and is no longer on the lot. In that case, the
> independent adjuster is not able to write a fire estimate for fire damages to a home
> we were not allowed to inspect at the time of the loss. Being that, the home was
> torn down there is no manner for us to know what the dimensions of the damaged
> room(s) were/are fire damaged in order to address the fire damages. On several
> occasions, Mrs. Lewis was asked if she could provide us with dimensions of each
> room and she provided us with an appraisal. The appraisal…is the same exact one
> the Lender initially provided to us. In any event, the ISA forwarded it to the
> independent adjuster…and he advised it doesn't say what the measurements are
> for each room and which rooms were fire damaged. Thus we were not able to
> proceed further with the claim. Under the Policy, as it was explained to Mrs.
> Lewis, we have the right to inspect the damaged property as often as reasonably
> required; unfortunately, without an existing home we are unable to inspect the
> damages. Mrs. Lewis…was notified that we will need photos of the affected
> rooms and any additional documentation that document the rooms damaged by
> the fire, water and smoke… ASIC Mot. Summ. J. Ex. B-9.

In a letter dated April 21, 2015, the Insurance Department informed Ms. Lewis that it had "not

identified a statutory violation" in connection with ASIC's handling of the claim, but that the

Insurance Department's review of her complaint does not preclude her from seeking legal advice

regarding any unresolved factual issues. ASIC Mot. Summ. J. Ex. B-10.

On August 16, 2016, Plaintiffs' counsel sent a letter on behalf of Ms. Lewis to ASIC,

pressing for ASIC to process and pay the "outstanding" Claim promptly. Pl. Resp. Mot. Summ.

J. Ex. 1 p.1. In support of this request, several exhibits were attached to the letter, including

interior and exterior photos of the Property which had previously been submitted to ASIC;

"Zillow Listing with room dimensions and photos"; additional photos of the damaged rooms; the appraisal of the Property dated July 25, 2005 ("2005 Appraisal") with additional photos and room dimensions; and various correspondence between Ms. Lewis and ASIC. *Id.* at p. 3, 38.

On May 1, 2018, Ms. Lewis filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Case No. 18-12958 ECF 1. On October 24, 2018, Plaintiffs filed a Complaint ("Complaint"), which was subsequently amended twice, against the following Defendants based upon alleged misconduct in connection with the handling of the insurance Claim related to the fire at the Property: U.S. Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp. ("U.S. Bank"), Wells Fargo, ASC, the Rutledge Defendants, and ASIC (collectively, "Defendants").[5] Case No. 18-00240 ECF 1, 3, 30. Through this adversary proceeding, Plaintiffs seek, *inter alia*, recovery for breach of contract ("Count II") against ASIC and the Rutledge Defendants, as well as damages recoverable for bad faith insurance practices under 42 Pa. Cons. Stat. Ann. § 8371 ("Count III") against ASIC. Compl. ¶¶ 22-43; Am. Compl. ¶¶ 23-44; Second Am. Compl. ¶¶ 23-50. Plaintiffs' breach of contract claim against the Rutledge Defendants was based upon their alleged status as third party beneficiaries of the third party administrator contract between Rutledge Law Office and Wells Fargo. Second Am. Compl. ¶ 28.

Plaintiffs aver, in connection with Count II for breach of contract, that Rutledge Law Office improperly withdrew the Claim without notice to the Plaintiffs and should have advocated for payment based upon existing evidence of loss. Second Am. Compl. ¶¶ 30-32. Specifically, Plaintiffs argue that Rutledge Law Office should have disputed ASIC's insistence on a

---

[5] To the Complaint, the Plaintiffs attached the following exhibits: (1) U.S. Bank's proof of claim; (2) the ASIC Policy with an effective date of 10/06/2012 and an expiration date of 10/06/2013; (3) an email from ASIC to Ms. Lewis dated April 20, 2015; (4) a Report of Fire filed by the City of Philadelphia Fire Department dated 05/30/2013; and (5) a letter from Plaintiffs to ASIC dated August 16, 2016 with attached exhibits. Compl. Ex. A-E. Plaintiffs attached the same exhibits to their Amended Complaint as their Complaint. *See* Am. Compl. Plaintiffs did not attach any exhibits to their Second Amended Complaint. *See* Second Am. Compl.

condition—inspection of the Property—that the Plaintiffs could not meet. *Id.* at ¶ 32.

Accordingly, Plaintiffs seek to hold the Rutledge Defendants financially responsible for any

diminution in value of the Claim resulting from its withdrawal of the Claim. *Id.* at ¶ 33.

Furthermore, in connection with Count II, Plaintiffs argue that ASIC breached its legal duty to

pay all benefits owed under the ASIC policy for the Plaintiffs' viable, valid claim for loss from

the fire. *Id.* at ¶ 39.

Count III for bad faith insurance practices is based upon ASIC's failure to process and

pay the Claim for over two years despite the Plaintiffs providing ASIC with all documents and

information which were possible to provide. *Id.* at ¶¶ 42, 43, 44, 45. As such, according to

Plaintiffs, because ASIC has never expressed its intent to pay or deny the Claim, the Claim

remains open but unprocessed and unpaid. *Id.* at ¶ 44.  Furthermore, Plaintiffs argue,

> [a]fter two additional years of waiting for the Claim to be paid, numerous
> attempts to obtain a commitment from Assurant to pay the claim, and having
> incurred substantial costs and harm…Assurant's continued failure to pay the
> Claim treats Plaintiffs unreasonably and unfairly and constitutes bad faith
> actionable under Pennsylvania law. *Id.* at ¶ 45.

Discovery in this adversary proceeding closed on February 24, 2020.[6] Case No. 18-00240

ECF 54. On March 25, 2020, ASIC filed a motion for summary judgment ("ASIC Motion") in

connection with Count II for breach of contract and Count III for bad faith, making various

arguments, including that Plaintiffs' claims for breach of contract and bad faith are time-barred

by the applicable statutes of limitations. ASIC Mot. Summ. J. p. 14-15. The same day, the

Rutledge Defendants also filed a motion for summary judgment in connection with Count II

---

[6] Aside from a limited agreement between counsel for ASIC and counsel for the Plaintiffs whereby the depositions
of Ms. Lewis and Mr. Lewis were permitted to be taken on March 2, 2020 and March 6, 2020, respectively, by
mutual consent, and aside from an order entered September 2, 2020 granting the Plaintiffs until September 4, 2020
to file supplemental pleadings or materials. *See* ASIC Mot. Summ. J. Ex. B-1 L. Lewis Dep., 54:22-55:22; Case No.
18-00240 ECF 103.

("Rutledge Motion," collectively with "ASIC Motion," "Motions"), arguing several bases for

entering judgment in its favor, including that the statute of limitations had expired on the breach

of contract claim and that the Plaintiffs had adduced no evidence demonstrating that the Rutledge

Defendants had breached the contract with Wells Fargo. Rutledge Mot. Summ. J. p. 16-21.

In response to the Motions, on April 15, 2020, the Plaintiffs filed a request under Federal

Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56(d) ("Rule 56") to

defer a determination of the Motions to allow Plaintiffs additional time to obtain evidence in

support of their defenses to the Motions ("Rule 56 Motion"). Case No. 18-00240 ECF 76 Pl. Fed.

R. Civ. P. 56(d) Mot. In their Rule 56 Motion, the Plaintiffs argued that due to the restrictions

imposed during the COVID-19 pandemic, preventing in-person contact and closing certain

offices of the City of Philadelphia ("City") to the public, the Plaintiffs were unable to obtain

certain documentation they needed from the City or to contact certain City officials to provide

declarations or affidavits in support of Plaintiffs' claims. Pl. Fed. R. Civ. P. 56(d) Mot. ¶¶ 5, 6.

They also needed more time to locate and interview prospective witnesses, and obtain Plaintiffs'

files related to the fire, which were located at a self-storage unit to which they had been denied

access during the pandemic. *Id.* at ¶¶ 7-8. According to Plaintiffs, they needed the

aforementioned discovery in order to assess

> the cause of and extent of damage from the fire, whether or not Plaintiffs denied
> Defendants access for inspection of the property, whether or not the demolition of
> the structure on the property at 1707 Page Street was undertaken by the Plaintiffs
> or the City of Philadelphia, as well as the date when such demolition occurred,
> and the extent of any work at the property that Plaintiffs performed after the fire,
> in terms of whether or not such work made it impossible for Defendants to assess
> the damage caused by the fire. *Id.* at ¶ 9.

Ultimately, the Court deferred ruling on the Rule 56 Motion and, instead, made "a

preliminary ruling on the threshold challenge raised by both Defendants in their respective

motions: that the Plaintiff's [sic] claims were barred by an applicable statute of limitations."

Case No. 18-00240 ECF 91, Op. p. 1, June 24, 2020 ("First. Summ. J. Op."); ECF 87 Mot. to

Ext. Time at ¶ 5. Accordingly, on June 24, 2020 the Court issued a memorandum opinion ("First

Summary Judgment Opinion") and order ("First Summary Judgment Order") (1) denying the

ASIC Motion with regard to the statute of limitations issue in connection with Counts II and III

and (2) granting the Rutledge Motion based upon the expiration of the statute of limitations

applicable to Count II for breach of contract. First. Summ. J. Op. at 4-6, 8. Subsequent to the

issuance of the First Summary Judgment Opinion and Order, this adversary proceeding was

transferred to the undersigned.

On July 5, 2020, Plaintiffs filed a motion for reconsideration of the portion of the First

Summary Judgment Order granting the Rutledge Motion on the basis that the Court had

incorrectly determined the date that the statute of limitations began to run on the breach of

contract claim. Pl. Mot. Recons. ¶ 15. On August 13, 2020, the Court granted the Plaintiffs'

motion for reconsideration and vacated the portion of the First Summary Judgment Order

granting the Rutledge Motion. Case No. 18-00240 ECF 100. After a hearing on the Rule 56

Motion on September 30, 2020, the Court denied the Rule 56 Motion, set a December 16, 2020

hearing date for the Motions, and requested supplemental briefing on whether the Plaintiffs

should be permitted to file a response to the Motions in light of the Court's denial of the Rule 56

Motion. Case No. 18-00240 ECF 112, dckt. entry betw. 113 & 114, dckt. entry betw. 114 & 115,

115, 116, 117, 125. Meanwhile, on October 26, 2020, after the Rutledge Defendants submitted

their supplemental brief, they filed a motion for leave to file a renewed motion for summary

judgment "on the limited issue of whether the Second Amended Complaint raised a third party

beneficiary breach of contract claim against Rutledge for the first time" for purposes of

calculating whether the statute of limitations on the breach of contract claim had expired. Case No. 18-00240 ECF 120 Mot. for Leave to File Renewed Summ. J. Mot. ¶ 17.

On December 2, 2020, after a hearing, the Court: (1) granted the Rutledge Defendants' request to file a renewed motion for summary judgment on the statute of limitations issue and instructed they to do so within three days; (2) permitted Plaintiffs to file a response to the Motions and Rutledge Defendants' soon-to-be-filed renewed motion for summary judgment by January 4, 2021; (3) permitted ASIC and the Rutledge Defendants to file a reply by January 25, 2021; and (4) set a hearing on the Motions and Rutledge Defendants' soon-to-be-filed renewed motion for summary judgment for February 4, 2021. Case No. 18-00240 ECF 126, dckt. entry betw. 126 & 127, 127, dckt. entry betw. 130 & 131. The Rutledge Defendants filed their renewed motion for summary judgment ("Rutledge Renewed Motion") on the same day. *Id.* at ECF 128.

On January 4, 2021, Plaintiffs filed a response to the Motions and Rutledge Renewed Motion ("Response"). Case No. 18-00240 ECF 134 Pl. Resp. Mot. Summ. J. In response to the argument in the ASIC Motion that the Plaintiffs are not entitled to recover for the fire damage under the ASIC Policy since they already recovered under the Travelers Policy, Plaintiffs assert without citation to any evidence that "they have come to believe that, unbeknownst to them at the time, 1707 Page was worth nearly $400,000 when the fire occurred," alleging that "[i]n the period prior to the fire, properties in the area that had been worth much less increased in value sooner and more rapidly from the 2007-08 collapse of housing values than other properties in value due to increased residency by Temple University students." *Id.* at 11. As such, the Plaintiffs were seeking to recover under the ASIC Policy the difference between the Travelers Settlement paid to Mr. Lewis, and the Property's alleged value of $400,000. *Id.*

On January 25, 2021, ASIC filed a reply brief in support of the ASIC Motion,

highlighting that Plaintiffs' sworn Schedules A and C filed in their 2013 chapter 13 case less than

two weeks before the fire valued the Property at $110,500 in contrast to the purported $400,000

value advanced in the Response. ASIC Reply Br. p. 8. Prior to that, the 2005 Appraisal of the

Property submitted to ASIC by the Plaintiffs on August 16, 2016 valued the Property at

$180,000. *Id.* at 4; Pl. Resp. Mot. Summ. J. Ex. 1. p. 38-39.

On January 25, 2021, the Rutledge Defendants filed a reply brief in support of the

Rutledge Motion and Rutledge Renewed Motion, arguing that at all times relevant to Plaintiffs'

claim, Rutledge Law Office was operating at the direction of its client, Wells Fargo, in

withdrawing the Claim, and that Plaintiffs had not produced any evidence demonstrating that

Rutledge Law Office breached its contract with Wells Fargo. Rutledge Reply Br. p. 4-5.

On February 4, 2021, the Court held a hearing on the ASIC Motion, Rutledge Motion,

and Rutledge Renewed Motion. Case No. 18-00240 ECF 137.

## III.    DISCUSSION

Having considered the parties' arguments made in connection with the ASIC Motion,

Rutledge Motion, and Rutledge Renewed Motion, these matters are ripe for adjudication. First,

in connection with the Rutledge Motion, having demonstrated that there is no genuine dispute

that the Plaintiffs cannot establish certain basic elements necessary for a *prima facie* breach of

contract claim, namely, the terms of the contract which were breached, the Rutledge Defendants

are entitled to judgment as a matter of law, and the Court grants the Rutledge Motion, rendering

moot the Rutledge Renewed Motion.

With regard to the ASIC Motion, while the Court finds the Plaintiffs' speculation

regarding the purported $400,000 value of the Property insufficient to raise a genuine factual

dispute in connection with whether the Plaintiffs are entitled to recover under both the Travelers Policy and the ASIC policy, the evidence does reflect a genuine dispute regarding whether ASIC's conduct in processing the Claim constitutes bad faith under Pennsylvania law. Accordingly, the Court grants the ASIC Motion in part in connection with Count II, and denies it in part in connection with Count III.

### A.    Summary Judgment Standard

Under Rule 56(a), made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7056, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When ruling on a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed material fact for resolution at trial. *Green v. Didio*, 607 B.R. 804, 808 (Bankr. E.D. Pa. 2019) (B.J. Frank). "A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party." *Odom v. Philadelphia Parking Auth. (In re Odom),* 571 B.R. 687, 692 (Bankr. E.D. Pa. 2017) (B.J. Frank).

If the movant is the party with the burden of proof at trial, the movant "must produce enough evidence to justify a directed verdict in its favor in order to meet its initial burden." *Id.* at 693. However, if the movant is the defendant or the party without the burden of proof at trial,

> the movant must demonstrate the absence of a genuine issue of material fact, but the movant is not required to support the motion with affidavits or other materials that negate the opponent's claim. Rather, the movant may assert that the party with the burden of proof has not come forward with evidence to support one or more elements of its claim… When a party moving for summary judgment does not have the ultimate burden of proof at trial, it may simply identify deficiencies in the non-moving party's arguments and record; the moving party need not support its position with affirmative evidence. Courts routinely describe this process as 'pointing out' essential deficiencies and indicate that the hurdle for a moving party to clear is relatively low. In response to such a summary judgment

17

> motion, a non-moving party who has the burden of proof may make a 'Celotex rebuttal' – i.e., providing additional, admissible evidence in its response to the summary judgment motion sufficient to establish the existence of a material factual dispute. The non-moving party is 'not required to prove his entire case,' but only to raise a triable factual dispute over the deficient aspects pointed out by the moving party… If a Celotex rebuttal raises a disputed issue of material fact, summary judgment must be denied. However, if the respondent fails to raise such an issue, then the moving party is entitled to summary judgment. *Green,* 607 B.R. at 808-09.

In other words, if the moving party is the defendant or party without the burden of proof at trial, the movant may succeed on summary judgment simply by demonstrating that the party with the burden of proof has not supported one or more elements of its claim with evidence sufficient to make out its *prima facie* case. *Id.* Once the movant meets its initial burden, the non-moving party must then go beyond the pleadings and counter with evidence designating specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *DiSantis v. Morgan Props. Payroll Servs., Inc.,* Civ. Action No. 09-6153, 2010 WL 3606267, at *4 (E.D. Pa. Sept. 16, 2010). This requires the party opposing the summary judgment motion to "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

While courts must draw all reasonable inferences in favor of the non-moving party, "[t]he line between reasonable inferences and impermissible speculation is often 'thin' but is nevertheless critical because 'an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" *Prince v. BAC Home Loans Servicing, LP,* Civ. Action No. 16-CV-1544, 2018 WL 4154947, at *2 (E.D. Pa. Aug. 30, 2018) (quoting *Halsey v. Pfeiffer,* 750 F. 3d 273, 287 (3d Cir. 2014)). "Inferences must flow directly from admissible evidence." *Id.* at *3.

**B.    There Is No Genuine Dispute the Plaintiffs Failed to Adduce Evidence Sufficient to Support a *Prima Facie* Breach of Contract Claim Against the Rutledge Defendants.**

In the Rutledge Motion, the Rutledge Defendants point out that the Plaintiffs have failed to produce any evidence that Rutledge Law Office breached its third party administrator contract with Wells Fargo in connection with its handling of the Claim. Rutledge Mot. Summ. J. p. 7, 16-17.

To establish a *prima facie* breach of contract claim under Pennsylvania law, the plaintiff must show (1) the existence of a contract, including its essential terms; (2) breach of a duty imposed by the contract; and (3) resultant damages. *Bonilla v. City of Allentown,* 359 F.Supp.3d 281, 297 (E.D. Pa. 2019) (internal citations omitted). *See also Ashline v. Tri-State Envelope Corp.,* Case No. 3:18-CV-0434, 2018 WL 6178914, at *5 (M.D. Pa. Nov. 27, 2018) (internal citations omitted); *McCausland v. Wagner,* 78 A.3d 1093, 1101 (Pa. Super. 2013) (internal citations omitted).

Ultimately, it is clear based on the record before the Court that the Plaintiffs have simply failed to produce and cannot produce the third party administrator contract between Wells Fargo and Rutledge Law Office, especially given that discovery has long concluded. *See* Feb. Hrg. Tr. 10:23-11:1. Without the ability to present evidence of the contract, including its essential terms, the Plaintiffs simply cannot satisfy the elements of a *prima facie* breach of contract claim, including what duty imposed by the contract Rutledge purportedly breached. Due to this crucial deficiency, there is no genuine dispute that the Rutledge Defendants are entitled to judgment as a matter of law on the Rutledge Motion.[7]

---

[7]    The Plaintiffs' Rule 56 Motion never mentioned that the Plaintiffs needed additional time to acquire the contract in response to the Rutledge Motion. Instead, the Rule 56 Motion focused on the Plaintiffs' need for more time to conduct discovery due to the imposition of local, statewide, and federal restrictions in response to the COVID-19 pandemic to locate prospective witnesses, interview City officials, and obtain documentation from the

**C.    There Is No Genuine Dispute That the Plaintiffs Failed to Establish Their Entitlement to Recover in Excess of the Travelers Settlement Under the ASIC Policy.**

In connection with the breach of contract claim, ASIC argues that there is no genuine dispute that the Plaintiffs have not discharged their burden to show that the ASIC Policy should be triggered as excess and have adduced no facts in discovery explaining their entitlement to excess proceeds under the ASIC Policy in light of their recovery under the Travelers Policy. ASIC Mot. Summ. J. p. 17; ASIC Reply p. 2, 4.

Essentially, ASIC has supported the ASIC Motion by identifying a deficiency in the record with regard to the breach of contract claim – lack of evidence regarding Plaintiffs' entitlement to invoke the excess ASIC Policy at all. *See Green,* 607 B.R. at 808. As the parties with the burden of proof on their claim that ASIC breached the ASIC Policy by failing to pay the Claim, it is incumbent on Plaintiffs to prove their entitlement to invoke that policy in the first place, especially given the limitation on the ASIC Policy as an excess policy and the substantial Travelers Settlement. *See e.g., Bonilla v. City of Allentown,* 359 F.Supp.3d 281, 297 (E.D. Pa. 2019).

In support of Plaintiffs' argument that the excess ASIC Policy was triggered, they assert in their Response to the ASIC Motion that the Property was worth $400,000 at the time of the fire and that they are entitled to recover from ASIC the difference between the Property's purported $400,000 value and the Travelers Settlement. Case No. 18-00240 ECF 134 Pl. Resp. to

---

City. Case No. 18-00240 ECF 76 Rule 56 Mot. ¶¶ 3-7. Nowhere did the Rule 56 Motion mention that COVID-19 restrictions would have prevented the Plaintiffs from obtaining the contract or evidence of its terms. In fact, Plaintiffs could not have made this argument since discovery closed on February 24, 2020, weeks prior to the imposition of the restrictions in response to the COVID-19 pandemic. *See id.* at Ex. A, B, C, D.

In any event, it would have been primordial for the Plaintiffs to obtain the contract in the initial phase of discovery because the contract and evidence of its terms are essential to establishing the elements necessary for a breach of contract claim. Unfortunately, it appears the Plaintiffs simply overlooked the need for the contract in the initial phase of discovery.

Mot. Summ. J. p. 11. This speculation is not sufficient to defeat summary judgment. In the absence of any evidence substantiating the Property's purported $400,000 value, even a self-serving affidavit from the Plaintiffs, Plaintiffs' bare speculation alone simply does not create a genuine issue of material fact regarding the value of the Property and that the excess ASIC Policy was triggered.[8]

As discussed *supra,* the party opposing summary judgment may not rest on mere allegations, bare assertions, conclusory suspicions, or speculation and conjecture to establish that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324; *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). *See also Wharton v. Danberg,* 854 F.3d 234, 244 (3d Cir. 2017); *Gonzalez v. Sec'y of Dep't of Homeland Sec.,* 678 F.3d 254, 263 (3d Cir. 2012); *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) (citing *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005)); *Out Front Prods., Inc. v. Magid,* 748 F.2d 166, 172 (3d Cir. 1984); *Fireman's Insurance Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). That is exactly what Plaintiffs have done. Accordingly, because there is no genuine dispute that Plaintiffs have offered no evidence demonstrating the value of the Property at the time of the fire was $400,000 or that the excess ASIC Policy was otherwise triggered, ASIC is entitled to judgment as a matter of law on the breach of contract claim.

---

[8] In fact, the only evidence of record regarding the Property's value suggests the Property was worth much less than the Travelers Settlement at the time of the fire. In Schedules A and C from the Plaintiffs' 2013 bankruptcy case, the Plaintiffs swore that the value of the Property as of the petition date, approximately a month before the fire, was $110,500. *See* Case No. 13-13556 ECF 25 Sch. A, C. Additionally, the 2005 Appraisal Ms. Lewis submitted to ASIC in support of her Claim valued the Property at $180,000. Pl. Resp. Mot. Summ. J. Ex. 1 p. 38-39.

**D.      Genuine Issues of Material Fact Remain Regarding Whether ASIC's Conduct in Processing the Debtor's Claim Constitutes Bad Faith Conduct Under Pennsylvania Law.**

With regard to the bad faith claim against ASIC, genuine disputes regarding the propriety of ASIC's conduct in handling the Claim remain. The Third Circuit Court of Appeals ("Third Circuit") in an unprecedential opinion affirmed a judgment in favor of a plaintiff loss payee on a bad faith action against a defendant insurance company even absent a contractual duty under the insurance policy, which had been canceled by the time the loss occurred. *Gallatin Fuels, Inc. v. Westchester Fire Insurance Co.,* 244 Fed. Appx. 424, 426 (3d Cir. Aug. 9, 2007). Although finding the defendant insurer had not committed a breach of contract since the insurance policy had been canceled before the loss, the Third Circuit also noted that the insurer had not asserted cancelation of the policy as a reason for the denial for more than six months, misrepresented the terms of the policy, dragged its feet in the investigation of the claim, hid information from the insured, and continued to shift its basis for denial of the claim. *Id.* at 433-36. Under those circumstances, especially when the bad faith claim is not solely based upon a denial of coverage, a bad faith claim is not contingent on the underlying breach of contract claim. *Id.* at 435. Furthermore, a finding that the insurer did not have a duty to cover the plaintiff's claim does not make the insurer's actions per se reasonable. *Id.*

Under 42 Pa. Cons. Stat. Ann. § 8371,

> [i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorney fees against the insurer.

Courts must broadly construe the statutory bad faith remedy under Pennsylvania law against an insurer to effectuate its purpose. *Hanover Ins. Co. v. Ryan,* 619 F.Supp.2d 127, 140 (E.D. Pa.

2007). Under Pennsylvania law, bad faith is a frivolous or unfounded refusal to pay a claim, lack

of investigation into the facts surrounding a loss, or failure to communicate with the insured.

*Gallatin,* 244 Fed. Appx. at 433. Furthermore, delay by an insurer is a relevant factor in

determining whether bad faith has occurred in violation of Pennsylvania law. *Padilla v. State*

*Farm Mut. Auto. Ins. Co.,* 31 F.Supp.3d 671, 676 n.8 (E.D. Pa. 2014).

While ASIC asserts that its conduct in processing the Claim was entirely reasonable and

appropriate, the Plaintiffs have identified evidence raising a genuine dispute in that regard. First,

there is a genuine dispute regarding the extent to which ASIC investigated the facts when the

Claim was first initiated by Rutledge. Although ASIC may have attempted to gain access to the

Property from Rutledge Law Office prior to its demolition, there is no evidence reflecting that

ASIC ever contacted the Plaintiffs requesting access to the Property when its efforts to obtain

access from Rutledge Law Office were unavailing. Even more troubling, ASIC represented to

the Insurance Department that ASIC was "not allowed" to inspect the Property prior to its

demolition. ASIC Mot. Summ. J. Ex. B-9. The Court, again, sees no evidence that ASIC ever

requested access from the Plaintiffs, let alone that the Plaintiffs refused to grant ASIC access to

the Property.[9]

Additionally, section 146.6 of the Pennsylvania Insurance Code provides that every

insurer shall complete investigation of a claim within thirty days after notification of the claim

unless it cannot reasonably be completed in that time. 31 Pa. Code § 146.6. It further provides

that if the investigation cannot be completed within that timeframe, every forty-five days

---

[9] As such, given that the Insurance Department was operating under certain assumptions which this Court finds to
still be in dispute, the Insurance Department's conclusion of the inquiry is not determinative of this Court's
resolution of the ASIC Motion, especially given that the Insurance Department itself advised Ms. Lewis that she was
not precluded from seeking legal advice regarding factual issues still in dispute. *See* ASIC Mot. Summ. J. Ex. B-10.

thereafter, the insurer shall provide the claimant with a reasonable explanation for the delay and state when a decision on the claim may be expected. *Id.*

The correspondence between Ms. Lewis and ASIC reflects that it has taken much longer than thirty days to resolve the Claim despite the fact that Ms. Lewis informed ASIC from the very outset that the Property had been demolished, making it clear that ASIC would never be able to inspect it to determine the extent of the fire damage to the Property. In fact, it troubles the Court that the status of the Claim remains unclear to this day, reflecting a deficiency in communication on ASIC's part. Subsequent to the January 13, 2015 correspondence telling Ms. Lewis that ASIC cannot move forward with the Claim, ASIC sent Ms. Lewis *another* letter on April 16, 2015 advising her that she could still submit any relevant documentation in support of the Claim she had, including documentation from Mr. Lewis which ASIC acknowledged it had not previously received and which ASIC indicated could help with the investigation. This understandably made it appear as though ASIC was still open to further investigation of her Claim. Even after Ms. Lewis attempted to follow up on the Claim in August 2016 by re-submitting supporting documentation, there is no evidence that ASIC ever responded to that inquiry. The foregoing could potentially constitute a failure to communicate effectively with the insured and/or a violation of section 146 of the Pennsylvania Insurance Code.[10]

Based upon the foregoing, the Court concludes the Plaintiffs have identified sufficient evidence to demonstrate genuine factual issues remain in connection with the bad faith claim

---

[10] Although such a violation would not necessarily constitute a per se violation of the bad faith standard, it would be admissible and relevant to support a claim of bad faith. *Romano v. Nationwide Mut. Fire Ins. Co.*, 435 Pa. Super. 545, 646 A.2d 1228, 1233 (Pa. Super. Ct. 1994).

against ASIC. As such, Count III against ASIC survives the summary judgment stage and the Court must deny the ASIC Motion in connection with Count III.[11]

## IV.    CONCLUSION

Based on all the foregoing, the Court concludes that the Rutledge Defendants are entitled to judgment as a matter of law on Count II for breach of contract, that ASIC is entitled to judgment as a matter of law on Count II for breach of contract, and that genuine material factual disputes remain regarding Count III for bad faith against ASIC.

Date: April 15, 2021_____                    _____
                                             Honorable Ashely M. Chan
                                             United States Bankruptcy Judge

---

[11] Although Mr. Lewis is not listed on the ASIC Policy, ASIC has not discharged its burden to prove as a matter of Pennsylvania law that a co-owner and co-mortgagor of a Property would not have any rights under a force-placed insurance policy issued against his real property. That Mr. Lewis did not believe he had rights under the ASIC Policy is not necessarily determinative of whether he actually did under Pennsylvania law. *See* ASIC Mot. Summ. J. Ex. B-2 J. Lewis Dep., 91:24-92:1. That said, ASIC may renew its argument that Mr. Lewis is entitled to no recovery based upon Count III at trial.